*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ROWELL, Minors.

UNPUBLISHED
April 25, 2019

No. 345139
Macomb Circuit Court
Family Division
LC Nos. 2015-000384-NA
            2015-000385-NA
            2015-000386-NA

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her three minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. FACTS

Respondent was married to the children's father between 2006 and 2012. During the marriage, Child Protective Services (CPS) investigated the family several times following allegations of abuse and neglect. In an effort to avoid removing the children, respondent and the children's father were offered services during these prior proceedings. After respondent and the children's father divorced, respondent was awarded legal and physical custody of the children. After the divorce, CPS again investigated the family numerous times. In December 2015, then five-year-old AR appeared at school with bruises on her face, neck, and back. Respondent's boyfriend, A. Shay, was alleged to be the perpetrator of the abuse.[1]

The Department of Health and Human Services petitioned the trial court to take jurisdiction of the children, and the trial court granted the petition after a jury found that a statutory basis for jurisdiction had been established by a preponderance of the evidence. During the adjudication hearing, respondent's oldest daughter, CR, testified that she both saw and heard

---

[1] A. Shay eventually was convicted of fourth-degree child abuse arising from his abuse of AR.

Shay beat AR. At the dispositional hearing that followed, the trial court ordered respondent to participate in services designed to address her mental health issues and parenting deficits. The trial court further ordered respondent to provide a safe and stable environment for the children and not permit the children contact with any unsafe or unstable person.

Approximately two years after the children came into care, petitioner concluded that respondent had made insufficient progress with her treatment plan. During this time, respondent continued to have a relationship with Shay and did not cooperate in all ordered services. Further, the children's treating therapist reported that continued contact with respondent was re-traumatizing the children. Consequently, petitioner filed a supplemental petition requesting termination of respondent's parental rights. At the conclusion of the termination hearing, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondent now appeals to this Court.

## II. DISCUSSION

### A. STATUTORY GROUNDS

Respondent first contends that the trial court erred when it found that statutory grounds for termination of her parental rights had been established by clear and convincing evidence. We disagree.

To terminate a parent's parental rights to a child, the trial court must first find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re HRC,* 286 Mich App 444, 459; 781 NW2d 105 (2009). Only one statutory ground for termination is necessary to support termination of parental rights. See *id.* at 461. This Court reviews the trial court's findings for clear error, as well as its determination that a statutory basis for termination has been established. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re HRC,* 286 Mich App at 459.

In this case, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). At the time of the termination hearing, these statutory provisions permitted termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.[2] [MCL 712A.19b(3)(c)(*i*), (g), (j).]

After reviewing the record, we conclude that the trial court did not err when it found clear and convincing evidence to terminate respondent's parental rights under these grounds. The statutory ground under subsection (3)(c)(*i*) exists "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks and citation omitted). Consideration under this subsection requires the trial court to assess the circumstances that led to the child's adjudication and whether the circumstances are resolved or are reasonably likely to be rectified within a reasonable time. See *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991). Determining what is reasonable includes considering how long it will take the parent to improve and how long the child can wait for that improvement. See *id*.

Here, respondent's children were removed from her care because at least one child was subjected to physical abuse by respondent's boyfriend, from whom respondent failed to protect them. Respondent was referred for services intended to address her mental health issues and deficient parenting skills. At the time of the termination hearing, the evidence demonstrated that the children had been in foster care for more than two years and, during that time, respondent had failed to overcome the barriers to reunification.

Shortly after the children were removed from her care, respondent was evaluated by psychologist Terry Rudolph, who determined that respondent demonstrated limited insight into how her behavior affected others and exhibited problems with operational judgment. Dr. Rudolph recommended, among other things, that respondent participate in psychotherapy, which the trial court ordered. During the two years that her children were in foster care, however, respondent failed to cooperate with efforts to engage her in psychotherapy. Respondent refused to participate with any therapist recommended by petitioner, and also refused to execute a full release that would have permitted petitioner to evaluate her progress with her own counselor. The record therefore supports the finding that respondent did not substantially comply with the mental health component of her treatment plan. Further, although respondent participated in services designed to improve her parenting skills, the record indicates that she did not benefit from the services; she was apparently unable to apply the information provided in the parenting classes she attended, and continued to need intervention and redirection by agency supervisors

---

[2] MCL 712A.19b was amended by 2018 PA 58, effective June 12, 2018.

while visiting with the children. A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody. *In re White*, 303 Mich App at 710.

Further, respondent continued her relationship with Shay, the man who was convicted of physically abusing her youngest daughter. The trial court and the caseworkers cautioned respondent very early that a continued relationship with Shay would jeopardize reunification with her children. After Shay was convicted of fourth-degree child abuse involving AR, respondent claimed that she no longer had contact with him. Months later, however, a private investigator's surveillance of respondent confirmed that she continued to have a relationship with Shay.

At the termination hearing, respondent was unwilling to admit that Shay had abused AR, conceding only that she understood that he had been found guilty of fourth-degree child abuse. When asked why it was so hard to believe her children's testimony about Shay's abuse, respondent replied, "I wasn't there." Thus, the evidence demonstrated that respondent was either unable or unwilling to give credence to her children's assertions against Shay, supporting the finding that the children would not be safe in her care and that she would be unable or unwilling to recognize risks to her children.

Respondent also failed to demonstrate that she could provide her children with safe and suitable housing. Although petitioner determined that respondent's home was physically adequate, Shay appeared to either live in the home or at least to have access to the home. In fact, Shay was present during one of petitioner's assessments of the home. Accordingly, there was clear and convincing evidence that respondent continued to lack suitable housing for her children.

Finally, there was persuasive evidence that respondent would not be able to demonstrate that she could safely parent her children within a reasonable time. Dr. James Henry, Director of the Southwest Michigan Children's Trauma Assessment Center, participated in the children's trauma assessment and concluded that respondent does not recognize or take responsibility for her role in any problem. Dr. Henry noted that respondent failed to take responsibility for her actions that precipitated the removal of the children from her care, blaming the children's problems on the fact of their removal. Because the children had been in care for nearly two years at the time of the termination hearing, Dr. Henry concluded that it was unlikely that respondent would change within the reasonable future. In light of the record, the trial court did not err when it found clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

The evidence also supports the trial court's determination that termination was warranted under subsections (3)(g) and (j). This Court has held that both subsections (3)(g) and (j) are triggered when a parent fails to safeguard a child from intentional abuse. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). Here, respondent was repeatedly confronted with evidence that Shay had abused her youngest child, yet continued her relationship with him, even accompanying him to his criminal trial on the assault charges. In sum, the conditions that brought the children into care were not rectified, respondent failed to provide proper care and custody of her children, there was no reasonable expectation that she would be able to provide

proper care and custody within a reasonable time, and it was readily apparent that the children would be at risk of harm in respondent's care.

## B. BEST INTERESTS

Respondent also contends that the trial court erred when it found that termination of her parental rights was in the children's best interests. Again, we disagree.

Once a statutory ground for termination has been demonstrated, the trial court must find that termination is in the best interests of the child before it can terminate parental rights. See *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). If the trial court finds that a preponderance of the evidence establishes that termination is in the best interests of the child, the trial court is required to terminate the parent's parental rights. MCL 712A.19b(5). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016).

To determine whether the termination of a parent's rights is in the child's best interests, the trial court should weigh all of the available evidence. *In re White*, 303 Mich App at 713. Factors that the trial court may consider in making this determination include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, the parent's compliance with the service plan, the parent's visitation history with the child, the child's well-being in the foster home, and the possibility of adoption. *Id*. At this stage, the interest of the child in a stable home is superior to any interest of the parent. *Medina*, 317 Mich App at 237.

In this case, the trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests. At the time of termination, the children had been in foster care for more than two years. During this time, respondent failed to participate in certain court-ordered services, and failed to benefit from the services in which she did participate. A trauma assessment revealed that all three of the children had been traumatized and were suffering from depression and post-traumatic stress disorder. Dr. Henry testified that the children required permanency to feel safe and to have some semblance of security, and explained that permanency and stability was essential to their ability to process the abuse and encourage some sense of hopefulness for the future.

A review of the record, however, demonstrates that respondent is either unable or unwilling to meet her children's needs. The children have consistently articulated a fear of Shay and their concern that he would be present if they returned to respondent's care. Respondent acknowledged her children's fears, and recognized that they impaired her bond with the children. Nonetheless, she continued to maintain a relationship with Shay. Based on the existing record, the trial court did not clearly err when it concluded that respondent could not provide the children with the permanency, stability, and safety that they required.

Lastly, respondent contends, under the guise of a best-interest challenge, that petitioner did not make reasonable efforts to reunify the family. Our review of the record, however, establishes that reasonable efforts were, in fact, made for two years. Moreover, although petitioner has an obligation to make reasonable efforts for reunification, there exists a

commensurate responsibility that respondent participate in the offered services, *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012), and benefit from those services, *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014), which the record reveals did not occur in this case.

Affirmed.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

-6-